# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

BENJAMIN ALEXANDER, *et al.*,

    Plaintiffs,

v.

Case No. 4:18-cv-00569-RH-MJR

MARY MAYHEW, in her official capacity as Secretary, Florida Agency for Health Care Administration, and RICHARD PRUDOM, in his official capacity as Secretary, Florida Department of Elder Affairs,

    Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS DAVID WRIGHT'S CLAIM OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AS TO DAVID WRIGHT

Plaintiff, David Wright, brought this action under Title II of the Americans with Disabilities Act and *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), which held that unjustified institutionalization constitutes discrimination prohibited by the ADA. The depositions of Mr. Wright and his dedicated caregiver made clear not only that Mr. Wright is not currently institutionalized, but also that Mr. Wright faces no imminent threat of institutionalization. As a result, Mr. Wright cannot show an actual or imminent injury sufficient to establish constitutional standing. For the

same reason, Mr. Wright cannot prove that a modification of Defendants' policies, practices, or procedures is "necessary" to avoid discrimination—that is, to avoid his unjustified institutionalization. 28 C.F.R. 35.130(b)(7)(i). Because he lacks standing, his claim should be dismissed for lack of subject-matter jurisdiction. Alternatively, the Court should grant summary judgment as to Mr. Wright because Mr. Wright cannot establish, as he must, that a modification is necessary to avoid discrimination.

## STATEMENT OF FACTS

Mr. Wright and Ms. Griffin have been friends for thirty years and live together in a "very nice and comfortable" house in Jacksonville. Ex. 2 at 9:24–25:2, 23:25–24:4, 24:14–15. Mr. Wright has never lived in a nursing home or even thought about living in a nursing home. Ex. 1 at 44:12–14; Ex. 2 at 22:6–11. All of his day-to-day care needs are provided for. Ex. 1 at 33:24–34:1; Ex. 2 at 45:25–46:6. Ms. Griffin's help is all he needs, Ex. 1 at 20:21–23, and neither he nor Ms. Griffin has any reason to believe that Ms. Griffin will not be able to take care of him for the foreseeable future, Ex. 1 at 23:12–15; Ex. 2 at 90:3–10, 149:2–7. The only service or support that Mr. Wright would like to receive that he is not currently receiving is assistance finding a job, Ex. 1 at 18:11–19:8, 35:5–36:1, but Mr. Wright acknowledges that there is nothing the Defendants can do to help him on that front, Ex. 1 at 35:21–36:1.

Ms. Griffin is committed to Mr. Wright in all respects. A fifty-nine year old woman, Ms. Griffin has been Mr. Wright's caregiver for a decade, and they have

lived together for at least six years. Ex. 2 at 9:20–21, 11:2–3; 32:7–33:11. Ms. Griffin does not work outside of the home and has not thought about doing so. Ex. 2 at 137:22–138:2. Taking care of Mr. Wright is something that she wants to do. Ex. 2 at 50:19–21, 54:9–14. Her housing is covered through Mr. Wright. Ex. 2 at 24:8–25. Ms. Griffin has a power of attorney over Mr. Wright, Ex. 2 at 10:11, and she is the beneficiary of Mr. Wright's life-insurance policy, Ex. 2 at 18:12–19.

Ms. Griffin has eight, adult children who live in Jacksonville and help Mr. Wright when needed. Ex. 2 at 29:12–17, 33:23–34:15. If there are items Mr. Wright needs, Ms. Griffin uses the money her children give her to buy the items for Mr. Wright, although he usually does not need anything. Ex. 2 at 29:1–11, 137:3–7. Ms. Griffin's sister and daughter are available to sit with Mr. Wright while Ms. Griffin runs errands; sometimes Mr. Wright joins them on trips to the grocery store. Ex. 2 at 50:19–52:11–14. Ms. Griffin's daughter comes to sit with Mr. Wright anytime Ms. Griffin asks her to. Ex. 2 at 51:22–52:1. Ms. Griffin testified that Mr. Wright has "plenty" of family in the Jacksonville area, Ex. 2 at 40:17–19, 138:17–18, and she believes that Mr. Wright's sister would take care of Mr. Wright if she (Ms. Griffin) could not. Ex. 2 at 138:3–10, 139:6–10, 150:6–13.

Ms. Griffin cannot think of a service that Mr. Wright needs but does not currently receive. Ex. 2 at 45:25–46:6. While Ms. Griffin would appreciate help with meals, Ex. 2 at 53:7–8; 57:23–58:3, for someone to stay with Mr. Wright—other

3

than her family members—when she runs errands, Ex. 2 at 56:5–8, and to be paid for staying with Mr. Wright, Ex. 2 at 56:10–13, Ms. Griffin does not have any reason think that she would discontinue her caregiver services, including her preparation of meals. Ex. 2 at 90:3–10, 96:10–15, 149:2–7. Ms. Griffin believes that it is "[n]ot at all" likely that Mr. Wright would enter a nursing home. Ex. 2 at 49:10–15. She and Mr. Wright have never discussed it. Ex. 2 at 44:15–17. Mr. Wright is "comfortable" and "well taken care of," and his living conditions are "very good." Ex. 2 at 18:1–2, 44:21–22. All in all, Mr. Wright is "living pretty good." Ex. 2 at 18:1–2. And for her part, Ms. Griffin is "comfortable" keeping Mr. Wright. Ex. 2 at 53:18–19.

Ms. Griffin testified that she and Mr. Wright have never discussed Mr. Wright residing in a nursing home. Ex. 2 at 44:15–17. Ms. Griffin does not want Mr. Wright to enter a nursing facility, Ex. 2 at 47:22–25, and she does not have reason to believe that she will not be able to continue to provide meals for Mr. Wright. Ex. 2 at 48:4–8.

## LEGAL STANDARD

### I.  MOTION-TO-DISMISS STANDARD.

#### A.  This Court May Weigh the Evidence as to Jurisdictional Standing.

When a Rule 12(b)(1) "factual attack" is brought, the allegations in the complaint are no longer presumed to be true. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). In acting pursuant to its "substantial authority," the Court is

"[f]ree to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Williams v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)). The "existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims," *id.* at 1529 (quoting *Williams*, 645 F.2d at 412), so long as "the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action," *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).[1]

### B.  Constitutional Standing Requires An Actual or Imminent Injury-In-Fact.

Article III standing "requires plaintiffs to show they suffered an injury in fact traceable to the defendant's conduct and redressable by a favorable decision."

---

[1] The exception that converts a Rule 12(b)(1) analysis to a Rule 56 analysis is not present here. Jurisdiction becomes intertwined with the merits of a cause of action when the resolution of the jurisdictional inquiry also resolves a substantive element of the claim. *See Morrison*, 323 F.3d at 926; *Lawrence*, 919 F.2d at 1530. Whether Mr. Wright is at imminent risk of nursing-home entry is not among the three elements of an *Olmstead* claim. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 587 (1999) (recognizing a cause of action where (i) the State's treatment professionals determine that community placement is appropriate; (ii) the affected individual does not oppose the transfer to a less restrictive setting; and (iii) the placement can be accommodated, given the resources available to the State and the needs of others with disabilities). If this Court concludes that this motion implicates both a jurisdictional inquiry and the underlying merits and that the question raised in this motion cannot be resolved under a motion to dismiss under Rule 12(b)(1), then Defendants request that the Court treat this motion as motion for summary judgment under Rule 56.

*Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1206 (11th Cir. 2019). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1206–07 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546–47 (2016)).

While a plaintiff need not wait for an injury to occur to satisfy standing, any allegation of future injury must be "'imminent' or 'real and immediate' and not merely 'conjectural' or 'hypothetical.'" *Parrales v. Dudek*, No. 4:15-cv-424-RH/CAS, 2015 WL 13373978, at *4 (N.D. Fla. Dec. 24, 2015) (quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1265 (11th Cir. 2003)). Imminence connotes a high degree of probability and immediacy. *31 Foster Children*, 329 F.3d at 1266 (requiring a "substantial likelihood" of injury and a "high degree of immediacy"). A "possible future injury" is insufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

### C. "Serious Risk" is Not the Standard for Constitutional Standing.

Any injury will not do. To establish an injury in fact for standing purposes, the injury must be to a "legally protected interest." *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1304 (11th Cir. 2006) (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005)). "No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Cox*

6

*Cable Commcn's*, *Inc. v. United States*, 992 F.2d 1178, 1182 (11th Cir.1993). "That 'interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right.'" *Bochese*, 405 F.3d at 980–81 (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000)).

"[U]njustified institutional isolation" is the legally cognizable injury under *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). Plaintiffs seem to acknowledge as much in their Amended Complaint.[2] Where, as is Mr. Wright's case, a plaintiff is not institutionalized, the plaintiff must demonstrate an imminent risk of unjustified institutionalization. Yet Plaintiffs proceed as if a mere risk or possibility of unjustified institutionalization—in and of itself—carries the day. *See supra* note 2.

Even the United States Department of Justice acknowledges that risk alone will not do. Instead, it advocates a "serious risk" standard. *See* ECF No. 90 at 6. For

---

[2] *See* ECF No. 43 ¶ 3 ("Yet, because of the discriminatory way Defendants manage the public health care system, Named Plaintiffs and others like them face the real prospect of *unnecessary institutionalization*." (emphasis added)); *id.* ¶ 20. a. (proposing a class consisting of "[a]dult residents of Florida who are *at risk of unnecessary institutionalization* . . . ." (emphasis added)); *id.* ¶ 23 (claims of the proposed class are typical in that the proposed class members "who are without Medicaid long–term care services and are *at risk of unnecessary institutionalization*" (emphasis added)); *id.* ¶ 33 ("The ADA prohibits *unnecessary institutionalization* or segregation of persons with disabilities. 42 U.S.C. § 12132." (emphasis added)); *id.* ¶ 152 (alleging that Defendants violated the ADA by failing to provide home and community based services to the proposed class, "placing them *at risk of unnecessary institutionalization or segregation*" (emphasis added)).

7

reasons explained elsewhere, neither "risk" nor "serious risk" is the appropriate standard. ECF No. 95 at 9–10; ECF No. 64 at 2–6; ECF No. 41 at 4–7. Nothing in the text of Title II purports to make "risk" actionable, *see* 42 U.S.C. §§ 12132, 12133,[3] and, even if it did, it could not dispense with the constitutional standing requirement that injury be actual or imminent, and not merely possible. The elements of constitutional standing "are the irreducible minimum required by the Constitution for a plaintiff to proceed in federal court." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (quoting *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001)).

This Court need not decide, however, the appropriate risk standard at this juncture because under any standard—mere risk, serious risk, or imminent risk—the result is the same. Mr. Wright satisfies none and has no standing to sue under *Olmstead*.

## II.   SUMMARY-JUDGMENT STANDARD.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[3] Unlike Title III of the ADA, which expressly contemplates actions based on future acts or omissions, *see* 42 U.S.C. § 12188(a)(1) (providing a cause of action "to any person who is being subjected to discrimination . . . *or who has reasonable grounds for believing that such person is about to be subjected to discrimination*" (emphasis added)), nothing in Title II provides a cause of action to persons "about to be subjected to" discrimination.

matter of law." Fed. R. Civ. P. 56(a). The movant may discharge its burden by "pointing out" the absence of evidence to support an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995). The non-movant "then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute." *Thurmon v. Georgia Pac., LLC*, 650 F. App'x 752, 756 (11th Cir. 2016). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Spence v. Zimmerman*, 873 F.2d 256, 257 (11th Cir. 1989) (quoting *Celotex*, 477 U.S. at 323).

## ARGUMENT

I. **MR. WRIGHT IS NOT AT RISK—LET ALONE IMMINENT RISK—OF UNJUSTIFIED INSTITUTIONALIZATION.**

The testimony of Mr. Wright and Ms. Griffin make plain that Mr. Wright is not at risk—much less imminent risk—of unnecessary institutional isolation. As explained above, Mr. Wright has the full-time attention of a devoted and capable long-time friend and caregiver. Neither Mr. Wright nor Ms. Griffin can think of a service or support that Mr. Wright needs besides those that Ms. Griffin provides. Ms. Griffin cannot think of a service that Mr. Wright needs that he does not receive through some source. While Ms. Griffin would appreciate help with meals, for

9

someone to stay with Mr. Wright when she runs errands, and to be paid for staying with Mr. Wright, she has no reason think that she will stop caring for Mr. Wright. And none of these desires establishes a cognizable or redressable injury. Ms. Griffin believes it is not at all likely that Mr. Wright would enter a nursing home. Mr. Wright is comfortable and well taken care of, and his living conditions are very good.

Mr. Wright's circumstances are a far cry from those of typical *Olmstead* plaintiffs, whose precarious situations subject them to an imminent threat of nursing-home admission. For example, in *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1290–91 (M.D. Fla. 2010), the plaintiff, who was partially paralyzed, was under the temporary care of an out-of-town son in order to remain in the community, but would be forced, absent other assistance, to enter a nursing home when her son returned home. The plaintiff was hospitalized and, though medically ready to be discharged, was unable to return home from the institutional setting without the provision of home and community-based services. *Id*. at 1288–89. Mr. Wright's circumstances, in contrast, are stable. Neither Mr. Wright nor his devoted caregiver has any reason to believe that Mr. Wright's circumstances will compel his admission to a nursing facility.

Plaintiffs alleged the following "actual injuries" for purposes of establishing standing for Mr. Wright:

10

> David Wright has been on the waitlist since 2016. He uses assistive devices for walking, and does not have transportation for shopping and medical appointments. He needs assistance with transferring in and out of bed and bath, ambulation, bathing, dressing, housekeeping, preparing meals, and taking his medications on time. He is at risk of falls.

ECF No. 63 at 6 (citations omitted). None of these "actual injuries" is actionable under *Olmstead*, which protects against unjustified institutionalization. Moreover, the facts establish that Mr. Wright suffers no injury at all from these "actual injuries." All of Mr. Wright's care his needs are being willingly met by Ms. Griffin. Ex. 1 at 20:21–23; Ex. 2 at 45:25–46:6, 50:19–21, 54:9–14, 90:3–10, 96:10–15. Mr. Wright has transportation, Ex. 2 at 46:5, 53:8–9, and "he never missed a doctor's appointment" for lack of transportation. Ex. 2 at 52:5–9. Ms. Griffin's daughter takes Ms. Griffin and Mr. Wright shopping. Ex. 2 at 51:4–14. Mr. Wright has not fallen even once. Ex. 2 at 54:1–8. And while Mr. Wright may be slow walking with his cane, he gets to his destination all the same. Ex. 2 at 109:17–19.

## II. THE RELIEF MR. WRIGHT SEEKS IS NOT TRACEABLE TO THE DEFENDANTS, NOR REDRESSABLE BY DEFENDANTS.

Notwithstanding Mr. Wright's inability to demonstrate an imminent injury to a legally protected interest, his claim fails to establish standing for other reasons. As Mr. Wright acknowledges, the assistance that Mr. Wright seeks—a job—is not fairly traceable to the Defendants' operation of the long-term care managed care program,

and is not redress that a favorable ruling would afford. Ex. 1 at 18:11–19:8, 35:5–36:1.

### III. MR. WRIGHT CANNOT ESTABLISH THAT A MODIFICATION OF DEFENDANTS' POLICIES, PRACTICES, OR PROCEDURES IS NECESSARY TO AVOID HIS UNJUSTIFIED INSTITUTIONALIZATION.

For the same reasons, Mr. Wright cannot carry his burden to establish that a modification of Defendants' policies, practices, or procedures is necessary to avoid his unjustified institutionalization. Accordingly, the Court should enter summary judgment as to Mr. Wright's claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In *Olmstead*, the Court held that unjustified institutionalization constitutes "discrimination" in violation of the ADA. *E.g.*, 527 U.S. at 600 (recognizing that "unjustified institutional isolation of persons with disabilities is a form of discrimination"). Title II of the ADA requires public entities to make reasonable modifications in favor of a qualified individual with a disability, but only "when . . . necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7)(i). The necessity requirement embodies the commonsense recognition that the ADA does not require public entities to make any and all modifications that benefit qualified individuals with disabilities, *Tennessee*

*v. Lane*, 541 U.S. 509, 531–32 (2004) (noting that Title II does not require States to "employ any and all means" to make services accessible to persons with disabilities), but only such modifications as are necessary to avoid discrimination—here, to avoid unjustified institutionalization.

Here, for all of the reasons discussed above, Mr. Wright cannot prove that a modification of Defendants' policies, practices, or procedures is necessary to avoid his unjustified institutionalization. Mr. Wright has a committed, long-time, live-in caregiver who cares for him and attends to all of his needs, and will continue to do so. Mr. Wright lives comfortably. His friend and caregiver, who knows him best, believes it is not at all likely that Mr. Wright will enter a nursing facility. Mr. Wright cannot prove, therefore, that a modification of Defendants' policies, practices, or procedures is "necessary" to avoid discrimination in his case—that is, to avoid his unjustified institutionalization.

## CONCLUSION

For these reasons, Defendants respectfully move the Court either to dismiss David Wright's claims for lack of subject-matter jurisdiction, or to grant summary judgment as to Mr. Wright because Mr. Wright cannot prove that a modification of Defendants' policies, practices, or procedures is necessary to avoid discrimination.

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this motion contains 3,306 words.

                                              Respectfully submitted,

/s/ *James Timothy Moore, Jr.*
Andy Bardos (FBN 822671)
James Timothy Moore, Jr. (FBN 70023)
Ashley Hoffman Lukis (FBN 106391)
GRAYROBINSON, P.A.
Post Office Box 11189
Tallahassee, Florida 32302–3189
Telephone: 850–577–9090
andy.bardos@gray–robinson.com
tim.moore@gray–robinson.com
ashley.lukis@gray–robinson.com
*Attorneys for Defendants*

| | |
|---|---|
| Stefan R. Grow (FBN 93585)<br>General Counsel<br>Andrew T. Sheeran (FBN 0030599)<br>Assistant General Counsel<br>Agency for Health Care Administration<br>2727 Mahan Drive, MS#3<br>Tallahassee, Florida 32308<br>Telephone: 850–412–3675<br>stefan.grow@ahca.myflorida.com<br>andrew.sheeran@ahca.myflorida.com<br>*Attorneys for Secretary Mayhew* | Richard D. Tritschler (FBN 380954)<br>General Counsel<br>Department of Elder Affairs<br>4040 Esplanade Way<br>Tallahassee, Florida 32399–7000<br>Telephone: 850–414–2342<br>tritschlerr@elderaffairs.org<br>*Attorneys for Secretary Prudom* |